**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

RECEIVED
CLERK'S OFFICE
(Jan 7 cmca)
2014 JAN -6  AM 7: 41

U.S. DISTRICT COURT
MIDDLE DIST. OF GEORGIA
MACON, GEORGIA

| | |
|---|---|
| Dann Slayden Cross III, MBA, <br> Dr. Sharon Harvey Cross, PsyD., <br> their sons F.C., R.C., and D.C., <br><br>      *Plaintiffs* (propria persona) <br><br> v. <br><br> DOCTORS HOSPITAL OF AUGUSTA, LLC <br> Heyward Wells, Doctors Hospital administrator; <br> James Cole, Doctors Hospital Chief of Security; <br> Thomas Dorn, Doctors Hospital social worker; <br> Trisha Foster, Doctors Hospital patient advocate; <br> Richard Cartie, MD Doctors Hospital medical <br> director of pediatric critical care; <br> Chris Haga, Doctors Hospital admissions director; <br> Donna Masters, Doctors Hospital nurse manager; <br> Terrell Yelverton, Doctors Hospital nurse; <br> Julie Lewis, Doctors Hospital nurse; <br> Jimmy Wren, Richmond County Deputy Sheriff; <br> Lisa Rambo, Georgia Southwestern Judicial <br> District Juvenile Judge; <br> Patrick Eidson, Macon County DFCS attorney; <br> James Hurt, Macon County DFCS attorney; <br> Karan Albritton, Macon County DFCS supervisor; <br> Susan Barr, Macon County DFCS social worker; <br> Jane Doe, Richmond County social worker; <br> Janet Doe, Richmond County social worker; <br> Edna Messer, Pediatric Associates office <br> manager; <br> Stacee Fussell, CASA supervisor ; <br> Estella Lusane,  Court Appointed Special Advocate; <br> each spouse of each defendant, <br> in their individual capacity, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. **5 : 14-CV-006**

Jury Trial  Demanded

    *Defendants*

## Complaint

This is a civil action commenced pursuant to 42 U.S.C. § 1983 to redress the

deprivation of rights certain of which are expressed and guaranteed within the

Constitution or supreme Law of the Land.

1

#13162
$40000

Plaintiffs are natural persons seeking to hold Defendants accountable for depriving Plaintiffs of their inalienable rights under color law and Defendants' failure, neglect, or refusal to protect Plaintiffs from said deprivations although it was within their power to do so.

The Plaintiffs' son was unreasonably seized, his Fourth and Fifth Amendment rights violated due to a culmination of malicious actions set into motion by a pediatric physician working in concert and collaboration with state actors, several nurses, administrative hospital staff, the hospital's admissions director, the Doctors Hospital patient advocate, a hospital social worker, two Richmond County, Georgia DFCS social workers, two Macon County social workers, a Juvenile Judge, at least two Macon County DFCS attorneys, the Doctors Hospital security, and a Richmond County Sheriff's Deputy without reasonable cause or emergency circumstances justifying such deprivations.

The above entitled court is hereby respectfully directed to take judicial notice that each of the principal actors named as Defendants herein, at all material times and places mentioned herein, were cognizantly acting in concert under color of law to the manifest injury and deprivation of Plaintiffs' Constitutionally secured rights.

## Jurisdiction and Venue

1. The Plaintiffs, Dann Slayden Cross III and Dr. Sharon Harvey Cross, individually and as parents of F.C., R.C., and D.C., who reside in Macon County Georgia at a confidential address with a mailing address of P.O. Box 311, Ideal, Georgia 31041, bring this civil rights lawsuit pursuant to 42 U.S.C. § 1983 to redress the deprivation of their rights by the Defendants secured to them and expressed within the United States Constitution.

2. Jurisdiction of this Court is invoked under 42 U.S.C. § 1983 and the supreme Law of the Land. Venue properly lies in this Court given that all of the parties reside in this federal district.

2

**Parties**

3. Plaintiffs Dann Slayden Cross, Dr. Sharon Harvey Cross, and their young sons F.C., R.C., and D.C. are Americans residing near the city of Ideal within the State of Georgia. Aforementioned Plaintiffs are beneficiaries of the public trust known commonly as the Constitution and the supreme Law of the Land.

4. All Defendants are "persons" within the meaning of 42 U.S.C. § 1983 and at all relevant times were acting under color of law.

5. Defendant DOCTORS HOSPITAL OF AUGUSTA, LLC (a legal fiction) is located at 3651 Wheeler Rd., Augusta, Georgia 30909. Summons may be sent to the registered agent in Georgia as follows: DOCTORS HOSPITAL OF AUGUSTA, LLC, c/o "The Corporation Process Company", 2180 Satellite Blvd., Suite 400, Duluth, Georgia 30097.

6. Defendant Heyward Wells, at all times and places material hereto, was acting in the capacity of an employee within the Doctors Hospital. Defendant Wells may be served summons at : Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. He is being sued in his individual capacity.

7. Defendant James Cole, at all times and places material hereto, was ostensibly acting in the capacity of Security Chief within the Doctors Hospital. Defendant Cole may be served summons at : Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909.   He is being sued in his individual capacity.

8. Defendant Thomas Dorn, at all times and places material hereto, was ostensibly acting in the capacity of a social worker within the Doctors Hospital. Defendant Dorn may be served summons at : Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. He is being sued in his individual capacity.

9. Defendant Trisha Foster, at all times and places material hereto, was ostensibly acting in the capacity of a patient advocate within the Doctors Hospital.

3

Defendant Foster may be served summons at : Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. She is being sued in her individual capacity.

10. Defendant Dr. Richard Cartie, at all times and places material hereto, was ostensibly acting in the capacity of medical director of pediatric care within the Doctors Hospital. Defendant Cartie, may be served summons at : Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. He is being sued in his individual capacity.

11. Defendant Chris Haga, at all times and places material hereto, was ostensibly acting in the capacity of admissions director for Doctors Hospital. Defendant, Chris Haga, may be served summons at : Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. He is being sued in his individual capacity.

12. Defendant Donna Masters, at all times and places material hereto, was ostensibly acting in the capacity of nurse manager within the Doctors Hospital. Defendant, Donna Masters, may be served summons at her primary place of employment: Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. She is being sued in her individual capacity.

13. Defendant Terrell Yelverton, at all times and places material hereto, was ostensibly acting in the capacity of a nurse within the Doctors Hospital in Augusta, Georgia. Defendant Yelverton may be served summons at his primary place of employment: Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. He is being sued in his individual capacity.

14. Defendant Julie Lewis, at all times and places material hereto, was ostensibly acting in the capacity of a nurse within the Doctors Hospital. Defendant Lewis may be served summons at her primary place of employment: Doctors Hospital of Augusta, 3651 Wheeler Rd., Augusta, Georgia 30909. She is being sued in her individual capacity.

15. Defendant Jimmy Wren, at all times and places material hereto, was

4

ostensibly acting in the capacity of a Richmond County employee under color of state law and exercising the public trust powers belonging to an office styled as 'Office of the Sheriff'. Defendant Wren acted in the capacity of Richmond County, Georgia Sheriff's Deputy.  Defendant Wren may be served summons at his primary place of  employment: 400 Walton Way, Augusta, Georgia 30901. He is being sued in his individual capacity.

16. Defendant, Alicia Coogle Rambo, is an attorney and Juvenile Judge within the Southwestern Judicial Circuit.  Defendant Rambo, may be served summons at her primary place of business: Sumter County Courthouse, P.O. Box 607,  Americus, GA 31709. Defendant Rambo, at all times and places material hereto, was ostensibly acting in the capacity of a  Sumter County employee under color of state law and exercising the public trust powers belonging to an office styled as 'Juvenile Court Judge.'  She is being sued in her individual capacity.

17. Defendant, Patrick Eidson, is an attorney for DFCS.  Defendant, Patrick Eidson, may be served summons at his primary place of business: 101 Walnut Street, Suite A, P.O. Box 570, Leesburg, GA 31763.   He is being sued in his individual capacity.

18. Defendant, James W. Hurt , is an attorney for DFCS.  Defendant, James W. Hurt, may be served summons at his primary place of business: 111 W. 13th Ave., Cordele, GA 31015.  He is being sued in his individual capacity.

19. Defendant  Karan Albritton, at all times and places material hereto, was ostensibly acting in the capacity of a supervisor under color of state law  within the office styled as 'DFCS' , 'The DEPARTMENT', or 'Department of Family and Children Services'.  Defendant Albritton may be served summons at her primary place of employment: Macon County DFCS, P.O. Box 457, 413 Clifton Bradley Road, Oglethorpe, Georgia 31068.  She is being sued in her individual capacity.

20. Defendant  Susan Barr, at all times and places material hereto, was ostensibly acting in the capacity of a social worker under color of state law  within the office styled

5

as 'DFCS' , 'The DEPARTMENT', or 'Department of Family and Children Services'. Defendant Barr may be served summons at her primary place of employment: Macon County DFCS, P.O. Box 457, 413 Clifton Bradley Road, Oglethorpe, Georgia 31068.  She is being sued in her individual capacity.

21.  Defendant  Stacee Fussell, at all times and places material hereto, was ostensibly acting in the capacity of an office manager for CASA (Court Appointed Special Advocates) .  Defendant Fussell may be served summons at her primary place of employment: SOWEGA CASA, P.O. Box 732, Americus, GA 31709.  She is being sued in her individual capacity.

22.  Defendant Estella Lusane , at all times and places material hereto, was ostensibly acting in the capacity of an Officer of the Court under color of state law and exercising the public trust powers belonging to a CASA (Court Appointed Special Advocate).  Defendant Lusane may be served summons at her primary place of employment: SOWEGA CASA, P.O. Box 732, Americus, GA 31709.  She is being sued in her individual capacity.

23.  Defendant Edna Messer, at all times and places material hereto, was ostensibly acting in the capacity of an office manager for Pediatric Associates.  Upon information and belief Ms. Messer faxed private medical documents to state actors Estella Lusane and  Stacee Fussell without Lawful authority to do so.  Defendant Messer may be served summons at her primary place of employment: Pediatric Associates, 116 South Houston Road, Warner Robins, GA  31088.  She is being sued in her individual capacity.

24.  The true names, legal identity, and address's for summons for all of the named Defendants' spouses and the two Richmond County DFCS social worker Defendants, Jane and Janet Doe, are unknown at this time, but will be added by Amendment when ascertained, each in his or her individual capacity.

**Judicial Notice Statement**

25. The above entitled court is respectfully directed to take judicial notice that each of the principal actors named as defendants herein, whether bound by the solemn Oath or affirmation mandated at Article VI of the supreme Law of the Land in fact or not, did willfully exercise powers belonging to an office of public trust and, by such conduct, manifestly accepted the duties, obligations, and liabilities attendant to a trustee of such (public trust) powers.

26. The above entitled court is hereby further respectfully directed to take judicial notice that it has been undeniably established as a fundamental maxim of Law that the supreme Law of the Land is wholly within the purview of the foundational precepts set forth in the American Declaration of Independence which makes unmistakably clear that, by operation of Law, the primary and superseding duty (obligation) imposed upon anyone giving exercise to public trust powers is to "....secure (make safe)...the rights of Life, Liberty, and the pursuit of Happiness [with which all (wo)men are endowed by their Creator] - which encompass a whole plethora of other more specific rights relevant thereto.

27. Plaintiffs assert herein that Defendants, acting in concert and in such respective official capacities, not only failed to perform said primary and superseding obligation to Plaintiffs but manifestly acted contrary to said protective requirement with willful intent. Said primary obligation also carries the inherent ancillary duty to prevent such deprivations from occurring or reaching culmination. Plaintiffs further assert herein that Defendants were noticed, at all material times and places, that their conduct was unlawful and injurious to the secured rights of Plaintiffs and that any defense raised on the basis of "ignorance of the law" or "innocent intent" is undeniably without factual foundation.

28. The above entitled court is hereby further respectfully directed to take

7

judicial notice that the spouses of the principal actors named as Defendants herein, whether acting in active or passive capacity, are properly joined as party defendants hereto pursuant to the long established precepts of coverture, marriage, accessory contract, and division of spoils as well as abundant stare decisis upon the subject(s) of accessory, tontine wagering, and misprision - all of which are relevant to the intrinsic nature of the instant action now before the eyes of the court.

### Facts

    29. On December 4th, 2012 at approximately 4PM Plaintiffs' two year old son , F.C., accidentally burned the tips and tops of both of his feet.

    30. F.C.'s parents immediately washed their son's wounds, applied honey (a medically appropriate action), loosely wrapped his feet, and delivered him to the Coliseum hospital in Macon, Georgia.

    31. Coliseum medical staff again washed and wrapped F.C.'s feet recommending F.C. be seen by medical staff at the Doctors Hospital in Augusta, Georgia.

    32. F.C. and his father arrived at the Doctors Hospital in Augusta at around 10:30PM and were told that F.C. would go into surgery in the morning around 8AM on December 5th, 2012.

    33. The surgery would entail  wound cleaning, debriding, application of skin grafts, and wrapping.

    34. F.C.'s mother and grandfather arrived to the Doctors Hospital later that night.

    35. At around 8:30 AM on December 6th, 2012 the surgeon's assistant, Brian Shirley, entered F.C.'s hospital room to personally inspect F.C.'s wounds.  Brian Shirley acquired parental consent to perform surgery on F.C..

    36. At around this same time Defendant Cartie had also entered the hospital room and asserted that F.C. had not been vaccinated for tetanus and, "would now be now."

    37. Plaintiffs refused to provide informed consent for the tetanus vaccination of

their son to Defendant Cartie.

38. Defendant Cartie did not personally observe or examine F.C.'s injured feet.

39. Defendant Cartie failed to verify F.C.'s medical condition instead relying on "reports" even though F.C. was within three feet of Defendant Cartie.

40. Defendant Cartie never demanded any other procedure be performed other than tetanus vaccination.

41. A tetanus vaccine is not and can not be, under any circumstance, an emergency medical intervention.

42. Defendant Cartie was frustrated by Plaintiffs steadfast insistence on exercising their inalienable right to refuse  the demanded tetanus vaccine for their son.

43. Due to defendant Cartie's abusive and bullying demeanor, Plaintiffs made it known to medical staff that Defendant Cartie was "fired" insofar as being their son's pediatrician.

44. Defendant Cartie became affronted when Plaintiffs "fired" him.

45. Defendant Cartie's wounded pride and frustration with Plaintiffs led him to initiate a series of deceptions and brutal punishments directed at F.C. and his parents (Plaintiffs).

46. Defendant Cartie, directly assisted by Defendant Donna Masters, ordered that the scheduled wound cleaning and surgery be delayed until Plaintiffs consented to a tetanus vaccine for F.C.. Said additional surgical delay was approximately four hours in duration and had absolutely no medical basis whatsoever.

47. Defendant Cartie intended to punish and did punish Plaintiffs for invoking their inalienable right to refuse his demanded an demonstrably unnecessary medical intervention.

48. Due to Defendant Cartie's malicious order to delay medically necessary

debriding and surgery, approximately 18 hours had passes since F.C.'s wounds had been cleaned and dressed.

49. Of paramount importance, in suspected tetanus exposure cases, is the requirement to immediately wash , debride, and wrap the wound to effect an aerobic environment in which tetanus (Clostridium tetani ) can not survive or colonize to the point of endangering the patient.

50. Action consistent with an honest concern about F.C. being exposed to  tetanus would be the  immediate wound cleaning and debriding followed by skin grafts which Defendant Cartie delayed an additional 4 hours in order to punish Plaintiffs and without any medical justification for doing so.

51. Defendant Cartie's ordered "delay" ended when F.C. began to cry in discomfort and his parents (Plaintiffs) became visibly and consistently agitated that their son be seen to immediately.

52. F.C.'s father asked nurse Kathy Ecks why his son's surgery was being delayed.  Nurse Ecks indicated that it was due to the "vaccine issue".

53. Defendant Masters reported that the delay in surgery was due to another surgery which was more exigent.  However, both hospital staff and medical notes indicate that the delay was  ordered, with malicious intent, by Defendant Cartie.

54. Defendant Cartie ordered  F.C.'s surgery to be delayed in order to "encourage" Plaintiffs to consent to vaccinate.

55. At around 10 AM December 5th, 2012 Plaintiff Dann Cross met with Defendant Chris Haga so that Defendant Haga could personally inspect Plaintiff's (Dann Cross) ID.

56. Plaintiff Dann Cross  disallowed the copying of his ID citing that ID theft  is prevalent within medical institutions and that a copy of his ID would enable or encourage the theft of his ID.

57. Plaintiff Dann Cross allowed Defendant Haga to physically examine his (Cross's) ID.

58. Defendant Haga never indicated any concern to Plaintiffs that the ID had been anything other than authentic.

59. Plaintiffs were "self-pay" which prompted Defendant Haga to insist that Plaintiff Dann Cross apply for Medicaid and sign another admissions document in which no terms and conditions had been struck out.

60. Plaintiff Dann Cross had previously signed a Doctors Hospital admissions document wherein he (Dann Cross) struck out several disagreeable terms and conditions prior to signing.

61. During this brief meeting with Defendant Haga, Plaintiff Dann Cross refused to apply for Medicaid or to sign admissions documents with disagreeable terms and conditions.

62. At around noon on December 5th, 2012 it is believed that Defendant Cartie collaborated with two Richmond County DFCS social workers, Defendants Jane Doe and Janet Doe, to intimidate, harass, and threaten Plaintiffs. Defendants Jane Doe and Janet Doe plainly asserted that Plaintiffs son could be taken into the care and keeping of the Public Trust if Plaintiffs did not provide consent for the tetanus vaccine. Plaintiffs maintained their position of non-consent for the tetanus vaccine despite the Richmond County DFCS agents' hostilities and threats directed toward Plaintiffs.

63. Defendant Cartie and the hospital staff Defendants, by involving DFCS employees to investigate without emergency medical justification, set into motion a course of action he/they knew or reasonably should have known would result in the violation of the Plaintiffs' Constitutional rights.

64. Defendants Cartie's and Master's hospital notes indicate paranoid ideations to justify the inhumane treatment of Plaintiffs. Defendant Cartie's notes fail to mention

11

exculpatory evidence (to negate such imaginings and ideations) including the obvious fact that Plaintiff Dr. Sharon Cross was breastfeeding F.C. and was accompanied by her father while at the Doctors Hospital. Dr. Cartie's reports were demonstrably created in bad faith.

65. Plaintiffs asked Defendant Donna Masters to contact the Doctors Hospital CEO, (Doug Welch). Defendant Masters indicated that the CEO would be in touch with them "today or tomorrow".

66. Doctors Hospital CEO Doug Welch was never heard from or seen by Plaintiffs.

67. Then, based on information and belief, Defendant Cartie, working in concert with Defendants Chris Haga, James Cole, Donna Masters, and Heyward Wells employed Richmond County Sheriff Deputy Wren to intimidate and interrogate Plaintiffs under the pretext that an ID card had been "reported" as appearing to have been tampered with or altered.

68. The only person to have seen Plaintiff Dann Cross's ID prior to Defendant Wren was the Doctors Hospital admissions director Defendant Chris Haga.

69. Defendant Cartie's summoning of a Deputy Sheriff and the Defendants Jane and Janet Doe, further evidences "bad faith" reporting by Defendant Cartie in order to impose his will, via state actors, on the Plaintiffs.

70. These several intimidation tactics failed to result in Plaintiffs' consent to vaccinate.

71. Evidence indicates that Defendant Cartie then proceeded to consult and plan with Macon County  DFCS supervisor, Defendant Karan Albritton, to take custody of not just one but all three (according to Defendant Cartie's hospital notes) of Plaintiffs' sons.

72. On or around 8PM on December 5th, 2012 Defendant Julie Lewis entered Plaintiffs' hospital room accompanied by armed guards including Defendant Jimmy Wren to announce that F.C. would now be vaccinated. Plaintiffs again refused to consent to the

12

tetanus vaccination.

73. Defendant Lewis asserted to the Plaintiffs that the vaccination was court ordered and, as if a state actor, she served the so-called court order (Exhibit A) to Plaintiffs.

74. Plaintiffs were in absolute shock that events were unfolding as they were.

75. Plaintiffs were sleep deprived in addition to being perpetually, harassed, terrorized, and their concerns ignored by hospital staff and state actors throughout the day.

76. Plaintiffs were completely aware that their rights were being violated at the time they were being violated and noticed (verbally) Defendants Lewis, Wren, and others that their (Plaintiffs') rights were being violated and their (Defendants) actions were "wrong".

77. The court order titled, "ORDER FOR SHELTER CARE" (Exhibit A) stated , *"The medical staff explained the significance of the shots and father refused the shots for the child therefore putting the child's life, possibly, in danger."*

78. The mere possibility of danger does not constitute an  emergency or exigent circumstance that would justify the seizure of F.C. or any other human being.

79. At no time did any of the medical staff verbally convey any information, positive or negative, regarding the tetanus vaccine to the Plaintiffs.

80. Defendant Cartie, at no time, provided any information, significant or otherwise about the tetanus toxoid ( DT vaccine).

81. The so-called  "ORDER FOR SHELTER CARE"  contained no language to indicate probable cause or that exigent circumstance existed to justify the seizure of F.C. Said order was authorized by Defendant Lisa Coogle Rambo and prepared by Defendant Patrick Eidson.

82. Defendants Lisa Rambo's and Eidson's "ORDER FOR SHELTER CARE" was  not supported by Oath or affirmation as is mandated by the Fourth Amendment.

13

83. Defendant Lisa Rambo, asserting herself to be a Judge, is expressly required at Article VI (Supremacy clause) of the Constitution to support the Fourth Amendment.

84. Defendant Lewis indicated to Plaintiffs that they may leave the Doctors Hospital without their son or they could stay with F.C. as long as they did not attempt to flee the Doctors Hospital with F.C.

85. Defendant Lewis advised Plaintiffs to abandon their son F.C. to her and other hospital staff.

86. Plaintiffs refused to abandon their injured and traumatized son.

87. Defendants Lewis and Cartie, being a nurse and medical doctor, respectively, knew or should have reasonably known that refusal to vaccinate did not and could not have caused F.C. to be in imminent danger regarding the instant matter.

88. At no time did any of the named Defendants assert to Plaintiffs, by word or action, that failure to consent to a tetanus vaccine or failure to receive a tetanus vaccine presented an imminent danger or exigent circumstance regarding F.C..

89. Medical staff Defendants could not impose their will upon Plaintiffs without armed state actors presenting the threat of armed and lethal force to Plaintiffs.

90. Defendant Lewis demanded F.C. be taken to another room to be forced vaccinated. Under threat of lethal force and by threat of being separated, via force, from their son, Plaintiffs complied, under duress, and proceeded down the hall to what appeared to be a storage room.

91. Defendant Terrell Yelverton prepared to administer the vaccine while Defendant Lewis and Defendant Wren looked on.

92. Defendant Yelverton became confused by the court order (Exhibit A) and left the room for some 25 minutes at which time he returned and injected F.C. with two substances: TIG and DT. These were administered bi-latterly amidst intense screaming and crying from F.C. while Plaintiffs attempted to console their son.

14

93. According to the manufacturer of the TIG, "*Pediatric Use: Safety and effectiveness in the pediatric population have not been established.*"

94. After F.C. received the forced medical intervention, armed guards were posted near the Plaintiffs' room and at the exits for the rest of the night and the next day creating a veritable prison for the Plaintiffs.

95. Plaintiffs' later research indicated that the unwanted and forced medical intervention contained neurotoxins and ototoxins none of which were disclosed to Plaintiffs by Defendant Cartie or any other of the medical staff..

96. F.C. was later diagnosed with a hearing loss and, to this day, is severely delayed in his ability to speak .

97. On December 6th, 2012 at around 1PM Plaintiffs son was seized by Defendants Albritton and Barr, armed guards looking on, and taken to an unknown location.

98. As Plaintiffs left the Hospital room Plaintiffs observed Defendant Masters and another nurse crying.

99. Emotionally distraught Plaintiff Sharon Cross asked visibly distraught and crying Defendant Masters, "Are you happy now?". Defendant Masters responded, "No."

100. Defendant James Cole then escorted Plaintiffs and F.C.'s grandfather out of the Doctors Hospital at which time Plaintiffs traveled home without their son and without knowledge of their son's condition or location. As Defendant Cole escorted Plaintiffs from the Doctors Hospital to the parking lot he indicated that he regretted that this had happened to Plaintiffs and that he felt it was "wrong."

101. Defendants' son had never long been without his mother or father and was now deprived of both, deprived of his mother's nourishment in the form of breast milk and emotional support. This deprivation of their rights to familial association during a traumatic time (post burn recovery) when F.C. most required his parents' and familial

15

support.

102. On December 7th 2012 Plaintiffs visited their son at the Macon County DFCS in Oglethorpe, Georgia.

103. At this time Defendant Susan Barr entered into negotiations to have Plaintiffs' son returned. One of the conditions of return was for Defendant Barr to be allowed to enter and search Plaintiffs' domicile *prior* to returning F.C. to his parents.

104. Under duress, Plaintiffs agreed to allow Defendant Barr to enter and walk through the Plaintiffs' domicile located in Macon County, Georgia.

105. During this unreasonable search Defendant Barr requested to speak with Plaintiffs' sons R.C. and D.C. without Plaintiffs present.

106. Under duress Plaintiffs allowed Defendant Barr to interrogate minors R.C. and D.C.

107. An interrogation of a minor by a state actor without parents' freely given consent, without probable cause, and without an exigent circumstance is an unreasonable seizure under the Fourth Amendment.

108. Defendant Barr unreasonably seized Plaintiffs' two older sons, R.C. and D.C., so as to interrogate them.

109. On December 7th, 2012 approximately 27 hours after F.C. was unlawfully seized from Plaintiffs, F.C. was returned to his grandparents by an unidentified DFCS employee.

110. While briefly in government custody F.C. was neglected by Defendants Albritton and Barr resulting in his wrist being injured causing him great discomfort and mental anguish. A police report was made about this injury.

111. Upon hearing about Plaintiffs' son being unreasonably seized, another

16

medical doctor (a practicing surgeon) submitted a formal complaint against Defendant Cartie citing Cartie's "abuse of power" to the the Georgia Medical Board. Furthermore, said complaint indicated, *"Necessary surgery was delayed for a tetanus vaccine – which is not an acutely necessary medical treatment."*

112. Seeking to reacquire their son, Plaintiffs , on December 10th, 2012, attended a hearing in which Defendant Lisa  Rambo and Defendant James Hurt decided to allow plaintiffs' son to go back home to his family under the condition that Plaintiffs contract for 12 months of  "services" from DFCS or the so-called "DEPARTMENT."

113. Defendant James Hurt "prepared a "72 HOUR HEARING ORDER/PROTECTIVE ORDER" at Exhibit B.  Defendants Lisa Rambo authorized and made operative, under color of law, this so-called "Protective Order" with her signature.

114. On page two of the "72 HOUR HEARING ORDER/PROTECTIVE ORDER" are printed the following five actual threats to unreasonably seize F.C. :

A) The parents are to successfully complete parenting classes and immunization education. Any deviation will result in the child being taken into emergency custody, and the non-complying parent will be subject to civil contempt.

B) Comply with all home schooling regulations required by the Macon County Board of education. Any deviation will result in the child being taken into emergency custody, and the non-complying parent will be subject to civil contempt.

C) Ensure child receives all medical attention recommended by any medical provider. Any deviation will result in the child being taken into emergency custody, and the non-complying parent will be subject to civil contempt.

D) Sign any releases for information requested by the Department. Any deviation will result in the child being taken into emergency custody, and the non-

17

complying parent will be subject to civil contempt.

E) Cooperate with DFCS and any related agencies. Any deviation <u>will result in the child being taken</u> into emergency custody, and the non-complying parent will be subject to civil contempt.

115. Threats A Through E, if carried out, would be unreasonable seizures in violation of the law as expressed at the Fourth and Fifth Amendments.

116. Under duress, coercion,  and Defendants Rambo's and Hurt's threats to unreasonably seize their son,  Plaintiffs agreed to do as they were directed by Defendants Lisa Rambo and James Hurt.

117. The  "72 HOUR HEARING ORDER/PROTECTIVE ORDER" evidences that the law as it is expressed at the Fourth and Fifth Amendments are of no import to Defendants Lisa Rambo and James Hurt.

118. Given that their son was neglected and injured while briefly in the care and keeping of the Public Trust, Plaintiffs had the reasonable expectation that F.C. could again be harmed or even killed if again taken by these negligent state actors.

119. Plaintiffs were coerced into signing the so-called "Family Plan" document thus contracting, under duress , with DFCS.  Said document was not willingly agreed to or willingly signed by Plaintiffs.  Said document is, essentially, an unconscionable contract.

120. Exhibit  C is a partial transcript of the  coerced meeting Plaintiffs had with DFCS and CASA Defendant Estella Lusane regarding the so-called "family plan".  This "family meeting" with DFCS was not voluntary.  Plaintiffs clearly stated to Defendants, Lusane and Albritton, that their rights were and continue to be violated and that they (Plaintiffs) were threatened that their non-cooperation would result in their son being seized, whereafter he could, again, be  harmed or possibly killed.  Plaintiffs showed video and pictures of F.C's injured wrist to Defendants Albritton and Lusane.

121. At no time did Plaintiffs ever sign a document or agree to any demands made by any of the named state actors of their own free will.

122. Defendants Lisa Rambo, Edna Messer, Estella Lusane, and Stacee Fussell, by way of the document, "Appointment of Court Appointed Special Advocate" or "CASA" (Exhibit D) deprived plaintiffs of their Fourth Amendment rights to be secure in their private medical documents. Plaintiffs' Fifth Amendment rights were also violated insofar as any possible incriminating elements those unreasonably seized documents may have provided to the Defendants.

123. Said "CASA" document was specifically used by Defendants as if it were a subpoena or warrant.

124. Defendant Messer has refused to explain to Plaintiffs exactly why she allowed private medical records to be conveyed to state actors Rambo, Lusane, and Fussell.

125. The "CASA" document , the "ORDER FOR PROTECTIVE CARE" document, and the "72 HOUR PROTECTIVE ORDER" documents evidence extreme disregard for restrictions on state actors as provided by the Fourth Amendment.

126. Aforementioned documents authorized by Defendant Lisa Rambo evidences absolute disobedience to the Constitution directly resulting in its beneficiaries, the Plaintiffs, being deprived of their rights.

127. Plaintiffs have written letters to several of the state actor Defendants noticing them of specific Amendments which they (Defendants) are violating in addition to Article VI of our Constitution. Said state actors responded to Plaintiffs' claims of duress and rights violations with more rights violations and perpetually threatening to unreasonably seize Plaintiffs' son for non-compliance with the so-called court order.

128. On several occasions Plaintiffs contacted (in writing) multiple employees of

Doctors Hospital to inquire as to how and to whom complaints are made to the hospital regarding abusive treatment.

129. Employees contacted include Defendants Foster and Masters. Also contacted was Doctors Hospital chief of security and Defendant James Cole. All three of the aforementioned Defendants refused to answer Plaintiffs' questions as to how to make a formal complaint to the hospital.

130. Also contacted (in writing) was Ellen Hintz who is employed by HCA (HCA allegedly owns Doctors Hospital) as an ethics compliance officer. Plaintiffs asked Ms. Hinz how to file a formal complaint regarding the abuses suffered within Doctors Hospital. Ms. Hinz refused to answer Plaintiff's questions.

131. Exhibit E is titled, "What Hospitals Are Doing To Keep Their facilities Safe" and was written a few months prior to the unreasonable seizure of F.C..

132. According to this article Defendant Cole asserts that he makes training a top priority while Johnny Meiles asserts that his hospital has a policy or procedure in place for any "security" event.

133. Both Mieles and Cole indicated, "how they work closely with the Richmond County Sheriffs Office."

134 . The Doctors Hospital of Augusta has in place a formal or informal policy or custom of working with state actors resulting in the deprivation of Plaintiffs' rights.

135. Plaintiffs made it abundantly clear, both verbally and in writing, to the Doctors Hospital and its staff that no private medical information was to shared with anyone including Medicaid.

136. Defendants DOCTORS HOSPITAL and the named medical staff Defendants were fully aware that F.C. would receive Medicaid benefits if F.C. was seized by state actors and that Plaintiffs' private medical information would be made available to Medicaid.

20

137. Defendant Barr or someone within DFCS, without Plaintiffs' consent and after F.C.'s unreasonable seizure, activated Medicaid for F.C. retroactive to December 1st, 2012.

138. On January 21st, 2013 Defendant Dr. Cartie shared Plaintiffs' private medical data with a third party by billing Medicaid $356. Medicaid paid Dr. Cartie $132.67.

139. On February 2nd, 2013 Defendant Cartie's co-worker by the name of Eric E. Newman shared Plaintiffs' private medical data with a third party by billing Medicaid for $75 and received $17.78.

140. Eric E. Newman was also specifically restricted by Plaintiffs from sharing any information with Medicaid.

141. These egregious acts by Defendant Cartie and his co-worker, Eric Newman, of sharing private medical information with Medicaid, after being forbidden by Plaintiffs to do so, again indicates a pervasive and institutional-wide indifference to the Constitutionally secured rights of Plaintiffs.

### First Cause of Action
### Unreasonable Seizure and False Imprisonment
### in Violation of the Fourth Amendment to the U.S. Constitution
### (42 U.S.C. §1983 Claim)

142. Plaintiffs re-allege and incorporate by references all allegations set forth in the paragraphs above as if set out fully herein.

143. Defendants Richard Cartie, Heyward Wells, James Cole, Thomas Dorn, Trisha Foster, Chris Haga, Donna Masters, Terrell Yelverton, and Julie Lewis worked collaboratively and in concert with state actors and Defendants Lisa Rambo, Patrick Eidson, Karan Albritton, Susan Barr, Jimmy Wren, Jane Doe, and Janet Doe, under color of law, to deprive Plaintiff's of their right to be free from unreasonable seizures without probable cause, without a de jure warrant, without exigent circumstances, without

21

parental consent , and by threat of force of arms.  Defendants Richard Cartie, Heyward

Wells, James Cole, Thomas Dorn, Trisha Foster, Chris Haga, Donna Masters, Terrell

Yelverton, and Julie Lewis worked collaboratively and in concert with state actor Jimmy

Wren, under color of law, to falsely imprison F.C. and his parents within the Doctors

Hospital of Augusta, Georgia.

144.  Aforementioned Defendants violated clearly established Constitutional

rights of which a reasonable person in their positions knew or should have known.

**Second Cause of Action**
**Unreasonable Seizure and Search of Private "papers" in Violation of the**
**Fourth Amendments to the U.S. Constitution**
**(42 U.S.C. §1983 Claim)**

145.  Plaintiffs re-allege and incorporate by references all allegations set  forth in

the paragraphs above as if set out fully herein.

146.  Defendants Lisa Rambo, Estella Lusane, Stacee Fussell, and  Edna Messer

acting in concert and in such respective official capacities, not only failed to perform

primary and superseding obligation (to protect Plaintiffs' and F.C.'s rights) to Plaintiffs

but manifestly acted contrary to said protective requirement and with willful intent to

deprive Plaintiffs of their rights.  Said Defendants willingly and knowingly made

operative a "CASA" document (Exhibit D)  resulting in Plaintiffs being deprived of their

Fourth  and Fifth Amendment rights.

147.  Defendant Edna Messer was a willful participant engaged in joint action

with state actors in effecting the deprivation of Plaintiffs' rights.  Defendants violated

clearly established Constitutional rights of which a reasonable person in their positions

knew or should have known.

### Third Cause of Action
### Deprivation of Due Process in Violation of
### the Fifth Amendment to the U.S. Constitution
### (42 U.S.C. §1983 Claim)

148.  Plaintiffs re-allege and incorporate by references all allegations set

forth in the paragraphs above as if set out fully herein.

149.  Defendants Richard Cartie, Heyward Wells, James Cole, Thomas Dorn,

Trisha Foster, Chris Haga, Donna Masters, Terrell Yelverton, Julie Lewis, Edna Messer,

Lisa Rambo, Patrick Eidson, James Hurt, Karan Albritton, Susan Barr, Jimmy Wren, Jane

Doe, Janet Doe, Stacee Fussell, Estella Lusane, and the Doctors Hospital, under color of

law, deprived Plaintiffs of their due process rights expressed and guaranteed at the Fifth

Amendment.  Defendants violated clearly established Constitutional rights of which a

reasonable person in their positions knew or should have known.

### Fourth Cause of Action
### Deprivation of Due Process in Violation of
### the Fifth Amendment to the U.S. Constitution
### (42 U.S.C. §1983 Claim)

150.  Plaintiffs re-allege and incorporate by references all allegations set forth in

the paragraphs above as if set out fully herein.

151.  After unreasonably seizing F.C., Defendants Albritton and Barr neglected to

remove the Doctors Hospital I.D. bracelet from F.C.'s wrist.  The bracelet, fitting too

tightly, girded the complete circumference of F.C.'s wrist causing substantial pain,

discomfort, and anxiety for him.  Therefore,  Defendants Albritton and Barr, while acting

under color of law, deprived F.C. of his due process rights to personal security and bodily

integrity.

23

**Fifth Cause of Action**
**Unreasonable Search of Plaintiffs' home and unreasonable**
**seizure of Plaintiffs' two eldest sons in Violation of the**
**Fourth Amendments to the U.S. Constitution**
**(42 U.S.C. §1983 Claim)**

152.  Plaintiffs re-allege and incorporate by references all allegations set forth in the paragraphs above as if set out fully herein.

153.  Defendant Barr unreasonably searched Plaintiffs' domicile and seized Plaintiffs' eldest sons, R.C. and D.C., in violation of the Fourth Amendment.

154.  Defendant Barr entered the Plaintiffs home without a warrant, without Plaintiffs' voluntary consent, and without any evidence of exigent circumstance to justify said "search".  155.  Defendant Barr, by way of coerced consent , entered Plaintiffs' home and interviewed Plaintiffs' sons without parents present and without freely given parental consent.

156.  The interrogation of both Plaintiffs' sons by Defendant Barr was an unreasonable seizure of both sons.  Defendant Barr's entering of plaintiffs' domicile was an unreasonable search.

**Sixth Cause of Action**
**Unreasonable Seizure of Plaintiffs' son, F.C., in Violation of the**
**Fourth  and Fifth Amendments to the U.S. Constitution**
**(42 U.S.C. §1983 Claim)**

157.  Defendant DOCTORS  HOSPITAL of AUGUSTA , LLC is animated by natural persons demonstrating an informal policy or custom which resulted in depriving Plaintiffs of their Fourth and Fifth Amendment rights to not be unreasonably seized.

158.  Defendant DOCTORS HOSPITAL of AUGUSTA,  LLC consulted and collaborated with state actors to unreasonably seize and falsely imprison F.C. and both of

24

his parents without probable cause, without exigent circumstance,  and without parental consent.

159.  Defendant DOCTORS HOSPITAL of AUGUSTA,  LLC is a state created statutory fiction, animated by, among others, state licensed attorneys, and receives public monies by way of Medicaid and Medicare.  However, said Defendant is not a state actor insofar as being authorized to exercise public trust powers.

160.  DOCTORS HOSPITAL of AUGUSTA,  LLC (more accurately, the natural persons animating said LLC) must request or enable state actors to intervene on Defendant's behalf to impose Defendant's will through state actors, under the color of law presumption, to deprive Plaintiffs of their rights.

161.  Defendant DOCTORS HOSPITAL of AUGUSTA,  LLC utilizes an informal custom, in direct conflict with its own corporate policy, setting into motion or enabling to be set into motion events knowingly intended to deprive Plaintiffs of their inalienable rights via its bad faith and improper utilization of the Richmond County Office of the Sheriff , Richmond County DFCS, and Macon County DFCS.

## Damages

Defendants acting in concert and without warrant,  probable cause, exigent circumstances, or parental consent:

a.  breached the domestic tranquility of Plaintiffs' family, friends, community and the security thereof – resulting in hurtful and excessive distress, aggravation and anguish.

b.  caused Plaintiffs to suffer from excessive and unwarranted diminution of both their reputations and enjoyment of their lives.

c.  caused physical injury to F.C.'s arm while in the care and keeping of the Public Trust.

d.  caused Plaintiffs to suffer debilitating trepidation insofar as interacting with

pediatricians, nurses, hospitals, and private medical practices. Trepidation based upon the reasonable expectation that said interactions may result in Plaintiffs' sons being, again, unreasonable seized, neglected, harmed, or killed while in the care and keeping of the Public Trust.

## Prayer for Relief

Wherefore, the Plaintiffs respectfully request that this Court to:

    1. Declare that the actions of Defendants violated the Plaintiffs' rights certain of which are expressed and guaranteed withing the U.S. Constitution;

    2. Find that the Defendants intentionally and unlawfully violated the Plaintiffs' inalienable rights certain of which are expressed and guaranteed within and by the Constitution;

    3. For general and special damages according to proof at the time of trial;

    4. For costs of suit and interest incurred herein;

    5. For punitive damages for Defendants' conduct in willful and wanton disregard for the rights of the Plaintiffs;

    6. Any further injunctive or declaratory relief this court deems just and proper;

    7. Award monetary damages payable to Plaintiffs in Constitutional lawful money gold and / or silver coin as expressed in Article I Section 10 of the Constitution;

    8. That Plaintiffs' demands for all issues to be decided by the Jury demanded;

    9. If Defendants move to dismiss this suit then Plaintiffs demand this case to be heard by the Jury demanded and only dismissed if the Jury considers this case to be lacking in merit.

Dated this 7th day of January, 2014,

Respectfully submitted,

Dann Slayden Cross III, MBA
Dr. Sharon Harvey Cross, PsyD.
P.O. Box 311
Ideal, Georgia 31041
Phone: 478-949-5758
Email: section1983suit@gmail.com

Plaintiffs (propria persona)